IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


TERRY LEE JONES,                )
                                )
        Plaintiff,               )
                                )     **MEMORANDUM OPINION**
        v.                       )     **AND RECOMMENDATION**
                                )
K&R NUTRITION, INC.             )           1:09CV413
and E&R COLONE, LLC,             )
                                )
        Defendants.              )


This matter is before the court on a motion for summary judgment by Defendants (docket no. 18). Plaintiff has responded in opposition to the motion; therefore, the matter is ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge. Therefore, the motion must be addressed by way of recommendation. For the following reasons, it will be recommended that the court grant Defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff, an African-American (black) male, brings a claim for race discrimination against Defendants pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1982, arising out of an incident that occurred at a General Nutrition Center store ("GNC store") in Kernersville, North Carolina on January 20, 2009. Plaintiff filed his complaint on June 9, 2009, naming K&R Nutrition, Inc. as the sole Defendant. On July 9, 2009, Plaintiff filed a First Amended Complaint, naming both K&R Nutrition, Inc. and E&R Colone, LLC as Defendants. Defendants filed an Answer to the First

Amended Complaint on September 8, 2009, denying all wrongdoing and asserting various affirmative defenses. The parties have conducted discovery, and Defendants have now moved for summary judgment.

**FACTS**

The following facts are undisputed:

Rick Colone is the sole managing member of Defendant E&R Colone, LLC. (Colone Dep. p 13.) The Company is in the business of retail sales of health and nutrition products within the franchising system of GNC stores. (*Id.*) The Company operates two GNC stores. (*Id.*) The GNC store where the incident occurred giving rise to this lawsuit is located at 931 E. South Main Street in Kernersville, North Carolina ("the Kernersville store" or "Colone's store"). (*Id.* pp. 14, 15.)

On January 18, 2009, an armed robbery occurred at a GNC store owned by Erick Ullring in Salisbury, North Carolina ("the Salisbury GNC store" or "Ullring's store"). (*Id.* p. 49; Ullring Decl. ¶¶ 3-5.) The Salisbury GNC store was robbed at gunpoint by a single perpetrator. (Ullring Decl. ¶ 6.) The Salisbury GNC store employee who was working at the time of the robbery informed Ullring that the perpetrator had walked in when no other customers were in the store. (*Id.* ¶ 7.) The robber first acted like a customer before pulling out a handgun and forcing the employees to empty the cash register. (*Id.*) The robber was described as an African-American male of medium build with light-colored eyes, most likely in his mid to late 30s. (*Id.* ¶ 8.)

Later in the afternoon on the date that the Salisbury GNC store was robbed, Ullring received a call from the owner of a GNC store in Lexington, North Carolina (the "Lexington GNC store"). (*Id.* ¶ 9.) The owner of the Lexington GNC store informed Ullring that the store had also been robbed at gunpoint that same day. (*Id.* ¶ 10.) The owner of the Lexington GNC store informed Ullring that the robber had entered the store initially acting as a customer. (*Id.*) The robber then drew a handgun and ordered an employee to empty the cash register. (*Id.*) The robber was described as an African-American male of medium build, most likely in his mid to late 30s. (*Id.* ¶ 11.)

Ullring called Colone on either January 18 or 19, 2009, to inform him of the robberies at the Salisbury and Lexington GNC stores. (*Id.* ¶¶ 12, 13; Colone Dep. p. 49.) Ullring told Colone that the robber would walk into a GNC store close to dusk; act like a customer; stay in the store for an unusually long time, often longer than ten to twenty minutes; and wait until the store cleared out. (Colone Dep. pp. 25-26.) The robber would then act as if he was going to pay for a product, at which point he would pull out a gun and demand the money in the cash register. (*Id.* p. 26.) Ullring informed Colone that the robber of both GNC stores was described as an African-American male of medium build, most likely in his mid to late 30s. (Ullring Decl. ¶ 14; Colone Dep. p. 49.)

On January 20, 2009, at around 6 p.m., Plaintiff walked into Colone's store and went over to the men's vitamins area. (First Am. Compl. ¶ 10; Colone Dep. p.

26.) When Plaintiff first walked into the store, he had a pleasant conversation with Colone about Colone's dog. (Pl.'s Dep. p. 42; Colone Dep. p. 27.) Colone gave Plaintiff some assistance and showed Plaintiff a picture of Colone's wife and dog that was stored on Colone's cell phone. (Pl.'s Dep. p. 42.) Colone recalls speaking with Plaintiff about the Mega Man multivitamins. (Colone Dep. p. 27.) Plaintiff began to ask the same questions about the products and, according to Colone, the conversation started to "go in a circle." (*Id.* p. 28.) Colone decided to give Plaintiff some time to make his choice. (*Id.*)

An employee, Geoff Donn, then began assisting Plaintiff. (*Id.* p. 27.) As Donn continued to speak with Plaintiff, Colone eventually realized that Plaintiff had spent a significant amount of time in the store; that all of the other customers had left; and that it was dark outside. (*Id.* pp. 25-26, 29.) Colone also overheard some of the conversation between Plaintiff and Donn, and Colone noticed that they were going over the same questions repeatedly. (*Id.* p. 29.) According to Colone, Plaintiff was speaking with Donn about the same product over and over again for about fifteen minutes, which was not a typical amount of time for a minor transaction at the store.[1] (*Id.* p. 30.)

---

[1] Donn's own testimony regarding his conversation with Plaintiff corroborates Colone's version of events. That is, Donn estimates that he and Plaintiff talked about the same vitamins for approximately twenty minutes, which Donn also considered an unusual amount of time to make a decision about purchasing vitamins. (Donn Decl. ¶ 9.)

At some point during Plaintiff and Donn's conversation, Colone began to believe that a normal transaction was not occurring, and he further began to suspect that Plaintiff might be the person who had robbed the other two GNC stores. (*See id.* pp. 29-30.) Colone went outside and telephoned Ullring. (*Id.* p. 30.) Ullring did not answer, and Colone left him a message stating that he was worried that the person who robbed the other GNC stores might be in Colone's store. (*Id.*)

Colone re-entered the store, approached Plaintiff, and asked him if he had any further questions. According to Colone, he then told Plaintiff that he needed to make a decision about a purchase because they were going to begin doing inventory. (*Id.* p. 31.) According to Plaintiff, Colone told him he had to leave the store because of "bad weather." (Pl.'s Dep. p. 43.) Plaintiff refused to make a decision, and Colone then asked him to leave the store, which Plaintiff eventually did. (Colone Dep. p. 32; Pl.'s Dep. p. 49.) As Plaintiff was standing immediately outside the store, Colone took Plaintiff's picture with Colone's cell phone. (Colone Dep. p. 35; Pl.'s Dep. p. 50.) At this point, Plaintiff left the store. (Pl.'s Dep. p. 50.)

Colone called Ullring again and was able to reach him this time. Colone told Ullring that Plaintiff matched the physical description of the person who had robbed the other GNC stores. (Colone Dep. pp. 24, 25.) Colone then forwarded the picture that he had taken of Plaintiff to Ullring. (*Id.* pp. 23, 38.) Colone hoped that Ullring could show the pictures to the employee who had been in the Salisbury GNC store when it was robbed. (*Id.* p. 24.) At that time, Ullring was unable to confirm or deny

that Plaintiff was the person who robbed the other GNC stores because the employee who had been in the Salisbury GNC store when it was robbed was not available. (*Id.*; Ullring Decl. ¶ 17.) Ullring told Colone that he would try to contact the employee to show the employee Plaintiff's picture. (Colone Dep. p. 39.)

Colone then discussed what happened with Donn and told Donn that Plaintiff appeared to fit the description of the person who had robbed the other two GNC stores--an African-American male of medium build. (Donn Decl. ¶ 11; Colone Dep. p. 39.) Donn recalls Plaintiff as being an African-American male of medium build. (Donn Decl. ¶ 12.) Colone further informed Donn that the robber of the other GNC stores had initially entered the stores and had posed as a customer before robbing the store. (*Id.* ¶ 13.)

Colone and Donn then started to do inventory. Shortly thereafter, Plaintiff returned to the store. (Colone Dep. p. 41.) Plaintiff testified that he opened the door to the store and told Colone that the store appeared to still be open, despite that Colone had told him he had to leave. (Pl.'s Dep. p. 51.) Colone informed Plaintiff that the store was still closed, and Plaintiff left the store. (*Id.*) As Plaintiff began to drive away, Colone and Donn walked out into the parking lot. Colone told Donn to write down the license plate number on Plaintiff's vehicle. (Colone Dep. p. 42.) Colone then went inside the store and called the police. (*Id.*)

An officer arrived from the Kernersville Police Department, and Colone explained what had happened. (Colone Dep. p. 44.) Plaintiff, after having left the

store the second time, had also called the police. (Pl.'s Dep. p. 52.) The police asked Plaintiff to return to the store, which he did. (*Id.* pp. 54, 56.) The reporting officer spoke with Plaintiff and informed him that there had been some recent robberies at other GNC stores. (*Id.* pp. 56-57.) The police officer determined that there was no basis to arrest Plaintiff at that time. (Hill Dep. pp. 21-22.) Colone determined at that point that Plaintiff was probably not the robbery suspect since the police officer had not arrested Plaintiff. (Colone Dep. p. 60.)

The police officer took the report and asked Colone what he would like to do. (Colone Dep. p. 45.) Colone informed the officer that he would prefer that Plaintiff not return to the store. (*Id.*) According to Colone, he did not want Plaintiff returning to the store because Plaintiff was acting unstable and because Plaintiff did not appear to understand why Colone had taken the actions that he took. (*Id.* pp. 60-61.) The officer informed Plaintiff that Colone did not want him to return to the store, and Plaintiff left. (*Id.* p. 45.) At that point, Colone and Donn closed the store for the night. (*Id.*)

Ullring was eventually able to show the photograph of Plaintiff to the employee who was working at the Salisbury GNC store on the day of the robbery. (Ullring Decl. ¶ 18.) The employee was unable to tell whether the individual in the photograph was the same person who had robbed the Salisbury GNC store. (*Id.*) Ullring eventually contacted Colone to inform him that an arrest had been made in connection with the GNC store robberies. (Colone Dep. p. 56.) Taj Maurice

Pittman, an African-American male in his mid 30s, was arrested on January 27, 2009, and was eventually charged and convicted for the robberies of the Salisbury GNC store, the Lexington GNC store, and a GNC store in Concord, North Carolina. (Ullring Decl. ¶¶ 19-20.)

**STANDARD OF REVIEW**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all

justifiable inferences from the evidence, in the light most favorable to the non-moving party.  *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**DISCUSSION**

Section 1981 of Title 42 of the United States Code provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts in both the public and private sectors.  *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001)).  Section 1981's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b)).  Section 1982 of Title 42 of the United States Code states, in its entirety: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  Because Section 1981 and Section 1982 both derive their operative language from the Civil Rights Act of 1866, courts consistently construe these two statutes together.  *See Saunders v. Gen. Servs. Corp.*, 659 F. Supp. 1042, 1063 (E.D. Va. 1987).

To prove a claim for discrimination under either Section 1981 or Section 1982, a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest or legitimate property right.  *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).  A plaintiff may prove a Section 1981 or 1982 claim through direct or indirect evidence of race discrimination.  *See id.* at 434.  In Section 1981 and Section 1982 claims involving contracts for the purchase of goods or services or property rights where there is no direct evidence of race discrimination, courts have applied the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 793 (1973).  *See Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001).  Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  Once the plaintiff establishes a prima facie case, the defendant must respond with evidence that it acted with a legitimate, nondiscriminatory reason. *See id.* at 506-07.  If the defendant makes this showing, the plaintiff must then present evidence to prove that the defendant's articulated reason was pretext for unlawful discrimination.  *See id.* at 507-08.  Although the evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

To establish a prima facie case of discrimination under Sections 1981 and 1982, Plaintiff must establish that (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendants; (3) he met the defendants' ordinary requirements to pay for and receive services ordinarily provided by the defendants to other similarly situated customers; and (4) under Section 1981 he was denied the opportunity to contract for goods or services that were otherwise afforded to persons outside of the protected class, or, under Section 1982, he was denied the opportunity to purchase property.[2] *See Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Plaintiff concedes that he has not provided any direct evidence of racial discrimination. Thus, the court must apply the burden-shifting framework of *McDonnell Douglas*.

Here, even assuming that Plaintiff can meet the prima facie case, I find that Defendants have presented a legitimate, non-discriminatory reason for why they treated Plaintiff as they did on the day of the incident. That is, Defendants have presented ample evidence illustrating that Defendants had legitimate, non-

---

[2] At least one court in this circuit has held that, in cases such as this one, where there were no other customers around to compare the treatment that a plaintiff received with their treatment, a plaintiff can satisfy the fourth element by showing that he received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable. *See Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 707 (D. Md. 2000). It is not clear whether the Fourth Circuit has expressly adopted this test. *See Williams v. Staples, Inc.*, 372 F.3d 662, 668 n.5 (4th Cir. 2004). In any event, because the court here assumes that Plaintiff has met the prima facie case, there is no need to address whether Plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

discriminatory reasons for the actions taken by Colone on the day of the incident. Here, Colone has explained that he told Plaintiff to leave the store initially because he suspected that Plaintiff might be the person who robbed the other two GNC stores because Plaintiff fit both the physical description and the modus operandi of the person who had robbed the other stores.  It is undisputed that at least two other armed robberies had occurred at GNC stores in North Carolina–one in Lexington, and another in Salisbury.  Both of the robberies occurred on around January 18, 2009, just a few days before the incident giving rise to Plaintiff's claims.  The person who robbed the other GNC stores was described by the victims as an African-American male of medium build in his mid to late 30s.  Furthermore, the victims of the robberies at the other GNC stores stated that the robber initially acted as if he was a customer; would stay in the store longer than usual and until all of the other customers were gone; and would then draw a handgun and rob the store.  In sum, Defendants have presented a legitimate, non-discriminatory reason for why Colone initially told Plaintiff to leave the store.

Defendants have also presented a legitimate, non-discriminatory reason for why Colone would not let Plaintiff return to the store even after the police officer had determined that there was no basis for arresting Plaintiff.  Colone has testified that Plaintiff's behavior had been unusual and that Colone had a legitimate concern regarding the possibility of future problems with Plaintiff if he returned to the store.

In sum, Defendants have proffered legitimate, non-discriminatory reasons for the actions taken by Colone on the date of the incident giving rise to Plaintiff's claims.

Furthermore, Plaintiff has failed to present evidence that Defendants' stated reasons for ordering Plaintiff to leave the store were false and that the real reason was because Plaintiff is black. First, as to Colone's behavior towards Plaintiff before the police officer arrived, Plaintiff has presented no evidence supporting an inference that Colone's actions were really motivated by race, as opposed to a legitimate concern that Plaintiff was acting in a manner similar to the person who had robbed the other two GNC stores and that Plaintiff matched the physical description of the robber. Plaintiff's only evidence of pretext is that Plaintiff is black and that the day of the incident also happened to be inauguration day, with Barack Obama being sworn in as the country's first black president. These facts, alone, are simply not enough to show pretext. Furthermore, by Plaintiff's own account of his interaction with Colone, when Plaintiff first came into the store, he and Colone had a very pleasant conversation, discussing Colone's wife and dog. It was only after Colone began to suspect that Plaintiff might be the robber of the other GNC stores that his behavior towards Plaintiff changed.

Plaintiff has also failed to show pretext as to Defendants' stated reason for why Colone told the police officer he did not want Plaintiff returning to the store even after Colone had determined that Plaintiff was most likely not the suspect since the police officer had not arrested Plaintiff. Colone explained that, given the tense

circumstances between Colone and Plaintiff before the police arrived, Colone did not feel comfortable with Plaintiff coming back to his store. Colone explained in his deposition that "I still felt that there might be a threat there. I felt as though there could be some instability and he could come back in the store and cause trouble. At that time he . . . didn't understand our position on why we acted the way we did." (Colone Dep. pp. 60-61.) Thus, Colone has stated that he was clearly uneasy allowing Plaintiff to return to the store based on Plaintiff's previous unusual behavior and that Colone was anxious, given his interactions with Plaintiff, that something might happen in his store. Plaintiff has simply not produced any evidence of pretext to show that Colone's explanation is false and that he really acted in the manner that he did simply because Plaintiff is black. In sum, for the reasons stated herein, I find that summary judgment should be granted to Defendants as to Plaintiff's race discrimination claim brought pursuant to Sections 1981 and 1982.

**CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that the court **GRANT** Defendants' motion for summary judgment (docket no. 18) and dismiss Plaintiff's claim with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

August 4, 2010